**NATIONAL LIFE & ACCIDENT INS. CO. v. DOMAN.**

No. 944.

Court of Civil Appeals of Texas. Waco.

Sept. 25, 1930.

Rehearing Denied Oct. 30, 1930.

Williams, Williams, McClellan & Lincoln, of Waco, for appellant.

R. W. Cowan, Geo. Clark, and J. J. Campbell, all of Waco, for appellee.

STANFORD, J.

This suit was by appellee, the named beneficiary in a life insurance policy, to recover of appellant $180, the principal of said life insurance policy on the life of Carrie Doman, wife of appellee, together with 12 per cent. damages and reasonable attorney's fees. In response to two special issues submitted to them, the jury found:

(1) The deceased, Carrie Doman, was in sound health on October 1, 1928, the date said policy of insurance was delivered to her.

(2) A reasonable fee for plaintiff's attorney in this case would be $75.

On said special issues so found the court entered judgment for appellee for $286.50, being the amount found to be due upon said policy, including attorney's fees, interest and 12 per cent. damages. Appellant has duly appealed and presents the record here for review.

Under its third and fourth propositions appellant contends the trial court erred

in permitting the witness Dr. C. C. Collom, over the objection of appellant that the pertinent inquiry was the state of the health of the insured in 1928 and any other inquiry was immaterial, to testify as follows: "In my opinion, Carrie Doman's death did not result from disease which she had while I saw her in April, 1928. She died of heart trouble;" and, further, because the court erred in permitting Dr. C. C. Collom to testify, over the objection by appellant that such testimony was immaterial, irrelevant, and purely speculative, that "the condition myocarditis, which caused the death of Carrie Doman, could have arisen after October 1st, 1928." The policy made the basis of this suit was issued and delivered to Carrie Doman, the assured, on October 1, 1928. The policy provides: "No obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health."

Dr. C. C. Collom, after properly qualifying as a medical expert, testified as follows: "I had occasion to examine Carrie Doman in 1928 and 1929. I saw her twice; once in 1928 and once in 1929 * * * I saw Carrie Doman in consultation with Dr. Bradford in the spring. I don't remember exactly, but it was somewhere in April, 1928. I think she had had a case of influenza at that time, and there was some question as to the possibility of there being an abscess in the pleural cavity, and the possibility of it having to be drained. That was the occasion of my visit at that time. We decided that she could get well without drainage, though. The next time I saw her was along about the 11th of January, 1929, one afternoon. I know that this was the illness which caused her death. Her condition at that time, as disclosed by my examination, was very serious. Her heart was leaking. In my opinion as an expert physician, that is what killed Carrie Doman * * * I said that I saw Carrie Doman in the spring of 1928, probably in April, and I never saw her at all between that time and January 11th, 1929. I didn't see her between those dates. * * * In my opinion, Carrie Doman's death in 1929 did not result from a disease which she had when I saw her in April, that is when I examined her in 1928. She died of heart trouble. The thing that I saw her with in the spring was emphysema. There was no connection between the two. My opinion, as an expert, is that the condition that I observed could have arisen after October 1st, 1928." In other words, Dr. Collom testified the thing the deceased had when he examined her in April, 1928, was emphysema, but that she died of heart trouble on January 11, 1929, and that there was no connection between the two. As far as the record shows, according to the evidence of this witness, the deceased may have recovered of the emphysema prior to October 1, 1928, and

the heart trouble not set up until some time after said date, and so on the 1st of October, 1928, the assured may have been in sound health within the meaning of the policy. The burden of proof was upon appellant to show the assured was not in sound health on October 1, 1928, the date when the policy was delivered. National Life & Accident Ins. Co. v. Taree (Tex. Civ. App.) 8 S.W.(2d) 291; Southern Surety Co. v. Benton (Tex. Com. App.) 280 S. W. 551. The fact that she was not in sound health in April, 1928, at the time Dr. Collom examined her, while proper to be considered by the jury, was not conclusive of her condition as to being in sound health October 1, 1928, some seven months thereafter, and the fact that she died of heart failure January 11, 1929, is not conclusive she had heart trouble on October 1, 1928. At any rate, we think the evidence of which complaint is made was proper to be considered by the jury, and the court was correct in admitting same. These propositions are overruled.

■ Under its first and second propositions, appellant contends, in effect, that there was no evidence to support the finding of the jury, and so the trial court erred in refusing to instruct a verdict for appellant. When we consider that the burden of proof was upon appellant to prove the assured was not in sound health on October 1, 1928, the date the policy was issued and delivered to her, and that there is no direct evidence that she was not in sound health on said date, we are inclined to think, under this state of the evidence, and in view of the testimony of Dr. Collum, this was an issue of fact for submission to the jury. But, in addition to Dr. Collom's evidence, Lottie Fisher, who was twenty years of age and who was a daughter of Eddie Doman and the deceased, Carrie Doman, testified in part as follows: "I remember the time when my mother took down sick the last time and had to go back to bed during her last illness and died thereafter. It was about the latter part of November. During the month of October, or from September clear on up to November, my mother was in a condition where she was able to do her work, and she did do her work. She took in washing and ironing, and didn't complain any from it, and she didn't seem to feel any ill effect from it. * * * My mother was washing on the day the agent came to sell her the policy. * * * She continued in a condition where she was able to do washing a long time after October. She was able to do her work, washing and ironing, a long time before she took out the policy. She was able to do her work about six months before she took out the policy in October." The evidence of Anner Lewis and Eddie Doman is to the same effect as the above. The evidence of Dr. Bradford, who called in Dr. Collum as consulting physician about April 3, 1928, was to the effect that Carrie recovered and got better up to the last

time he saw her, which was on July 9, 1928. There is no evidence that any physician attended her from July 9th up to the time Dr. Collum was called the second time in January, 1929, and the evidence of other witnesses is to the effect that during this time she was able to do and did do all her work, such as washing, ironing, etc.; that she was doing a washing on the day the policy was delivered. We think the evidence was sufficient to raise an issue of fact for the jury as to whether or not the assured was in sound health when the policy was delivered. Funk v. Miller (Tex. Civ. App.) 142 S. W. 24; American National Ins. Co. v. Frankel (Tex. Civ. App.) 199 S. W. 1132.

We have considered all of appellant's assignments, and, finding no reversible error, overrule same. The judgment of the trial court is affirmed.