## MIDLAND NATIONAL BANK v. M. W. STRICKLAND.

Decided April 18, 1903.

**Sale—Delivery—Possession of Vendor—Loss of Goods by Fire.**

Plaintiff sold to defendant a lot of stoves then stored in a warehouse, agreeing that they might remain there without charge until called for, and defendant executed his note for their price, but before the stoves were called for they were destroyed by fire, without fault on the seller's part. Held, that in law the delivery was complete, and title having passed to the purchaser, he could not resist payment of the price because of such loss.

Appeal from the County Court of Dallas. Tried below before Hon. E. S. Lauderdale.

*Gilbert H. Irish,* for appellant.

TEMPLETON, ASSOCIATE JUSTICE.—Suit by the Midland National Bank of Washington, Ohio, against M. W. Strickland on a note for $468.95, dated May 1, 1899, due January 1, 1900, given by Strickland to the Wonder Manufacturing Company, and assigned by the payee to the plaintiff. Trial before the court without a jury, and judgment for the defendant.

The note was given for the purchase price of a lot of stoves which were sold by the said company to Strickland. At the time the contract of sale was entered into, the stoves were situated in a warehouse in Dallas. Some time thereafter the warehouse was burned. The stoves had not been removed, and were destroyed by fire. The question is, whether there had been such delivery of the stoves to the purchaser as would pass the title and risk. On this point the defendant testified as follows: "Some time in April or March, 1899, Mr. Chase, agent of the Wonder Manufacturing Company, came to me and said that he had a number of stoves in storage in Dallas which he desired to sell. I told him I had no use for stoves in the spring of the year, as I could not sell them, and had no place to store them. * * * Chase said he recognized the fact that it was not the right time of year to buy stoves, but

that he would make me a very low price on stoves and, moreover, he would allow them to remain where they were free of storage until I wanted them in the fall, or until I sent for them. I thereupon gave Chase an order for the stoves, which he evidently sent to the Wonder Manufacturing Company, for I received from them a letter asking that I execute a note for the amount of the order. I executed that note and sent it to them. That is the note sued on in this case. The stoves were subject to my order at any time. I did not demand them, however, until after the fire."

Chase testified substantially as did defendant. He said: "I went to Mr. Strickland and made him a special price on stoves, and agreed to allow them to remain where they were until he had room for them, without charge for storage, if he would buy them, and they were subject to his order. After some hesitation he agreed to buy them. I took his order in the usual way and sent it to the Wonder Manufacturing Company.

In Cleveland v. Williams, 29 Texas, 209, the rule is stated in this language: "By the common law, if the seller make a proposition and the buyer accept, and the goods are in possession of the seller, and nothing remains to be done to identify them, or in any way prepare them for delivery, the sale is complete, and the property in the goods passes at once." See also Blanton v. Langston, 60 Texas, 149. In Barrett v. Goddard, 3 Mason, 114, a number of bales of cotton in the vendor's warehouse were sold on six months' credit, for which the buyer's note was given. They were sold by marks and numbers and were thus fully identified, and part of the bargain was that they might remain in the warehouse, rent free, at the option of the vendee, and for his sole benefit, until the vendor should want the room. Before the note fell due the buyer failed, and the vendor refused to deliver. It was held that there was such a delivery as to complete the sale, and that the vendor was liable to the buyer's assignee for selling again. Judge Story said: "The principle is sound, that a continuance of the possession of the vendor does not prevent the delivery being complete, if nothing further remains to be done on either side, and the possession is by mutual consent. There is nothing in reason or principle to make the present case different, simply because the bales of cotton remained in the plaintiff's warehouse. It was part of the bargain that they should so remain, and a part of the consideration of the promise." This language was quoted with approval by the Supreme Court of Maine in Hotchkiss v. Hunt, 49 Me., 221; and it was further declared that "where, by the terms of the agreement, or by a fair implication therefrom, the article thus sold or resold is to remain in the possession of the vendor for a specific time or for a specific purpose, as a part of the consideration, and the sale is otherwise complete, the possession of the vendor will be considered the possession of the vendee, and the delivery will be complete and sufficient." See also Story on Sales, sec. 300.

The authorities cited settle this case in favor of appellant. It was

part of the bargain that the stoves should remain in the warehouse of the seller, subject to the order of the buyer, and the agreement that they should so remain was part of the consideration which induced the buyer to purchase. The contract of sale, by its terms, dispensed with the necessity for a manual delivery, and the possession of the vendor must be held to have been the possession of the vendee. There is no suggestion in the record before us that anything remained to complete the sale. The buyer had executed his note for the purchase money, and his right to have the stoves turned over to him on demand is unquestioned. It follows that the title had passed to the buyer, and that when the goods were destroyed by fire, without the fault of the seller, the loss fell upon the buyer, and he can not escape liability for the price of the goods.

The judgment will be reversed, and as there is no controversy as to the facts, judgment will be here rendered in favor of appellant for the amount due upon the note in suit.

*Reversed and rendered.*